IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| AUSENCIO PINEDA, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | C.A. NO. C-05-111 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of the Social Security | § | |
| Administration, | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff brought this action seeking review of the Commissioner's final decision that plaintiff is not disabled, and therefore, is not entitled to receive disability insurance benefits ("DIB") under Title II, or supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., 1381 *et seq*.

The Administrative Law Judge ("ALJ") identified plaintiff's severe impairments as cervical disc syndrome status post decompression and fusion at C4 and C5 vertebrae, headaches status post head trauma, pain disorder, and major depressive disorder, but found that plaintiff failed to establish he was disabled at anytime as defined by the Social Security Act. 20 C.F.R. §§ 404.1520(g), 416.920(g) (2005). The ALJ also found that plaintiff had the residual functional

capacity ("RFC") to perform a significant range of medium work.  Tr. 32.

Plaintiff moves for summary judgment to reverse the decision of the Commissioner, or in the alternative, to remand the case to the Commissioner for proper development of the record.  (D.E. 18, 21).  The government has filed a reply to plaintiff's motion for summary judgment, and also moves for summary judgment.  (D.E. 19).  For the reasons stated herein, it is respectfully recommended that plaintiff's motion for summary judgment be denied, that the government's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

## I.  <u>JURISDICTION</u>

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).

## II.  <u>BACKGROUND</u>

Plaintiff filed his disability application on September 11, 2002, claiming an inability to work since November 20, 2000, due to injuries to his head, shoulder, and right leg that occurred on May 17, 2000.  Tr. 66-67, 79.  These injuries caused plaintiff to suffer constant headaches, shoulder and back pain, and a sudden loss of his eye sight at times.  <u>Id.</u>  Plaintiff was injured when a metal frame became loose from the ceiling and fell 15 to 18 feet, eventually hitting him in the head.  Tr. 482.  Plaintiff claims the frame weighed between 35 and 40 pounds.  <u>Id.</u>

Plaintiff's application was initially denied on January 13, 2003. Tr. 36, 42. His application was also denied on reconsideration. Tr. 44, 47. He then requested a hearing by an ALJ. Tr. 48. The ALJ held an administrative hearing on April 20, 2004 in Corpus Christi, Texas. Tr. 61. On May 18, 2004, the ALJ issued his decision holding that the plaintiff was not disabled, and therefore, not entitled to either DIB or SSI benefits under the Social Security Act. Tr. 18. Plaintiff filed a request for review with the Appeals Council. Tr. 11. His request was denied on January 10, 2005. Tr. 4. He filed the instant suit in this Court on March 3, 2005. (D.E. 1).

## III. LEGAL STANDARDS

### A. Social Security Act Disability Benefits Requirements

The same law and regulations govern whether an individual is considered disabled, and therefore, entitled to either DIB or SSI benefits under the provisions of the Social Security Act. Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989) (citations omitted). Specifically, the Social Security Act establishes that every individual who is insured for DIB, has not attained the set retirement age, has filed an application for disability benefits, and is under a disability is entitled to receive disability benefits. 42 U.S.C. § 423(a)(1).

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence . . . "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## B.     Social Security Administration Regulations And Rulings

To determine if an individual suffers from a disability, as defined by Congress, the Commissioner has promulgated regulations containing a five-step sequential process to be used by the Social Security Administration. 20 C.F.R. §§ 404.1520, 416.920 (2005). A disability finding at any point in the five-step sequential process is conclusive and ends the analysis. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990) (citation omitted). A claimant bears the burden of proof on the first four steps with the burden shifting to the Commissioner at the fifth step. Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994). The claimant must prove that:

(1) he is not presently engaged in substantial gainful activity; (2) he suffers from an impairment or impairments that are severe; and (3) the impairment meets or equals an impairment listed in the appendix to the regulations; or (4) due to claimant's RFC the impairment prevents the claimant from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowling, 36 F.3d at 435; Villa, 895 F.2d at 1022.

The Fifth Circuit has held that "[t]he first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). The Commissioner may only find a claimant's impairment fails to meet the significant limitation requirement of step two, "'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" Id. at 391 (citing Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985)).

Step three requires claimants to prove any impairment meets one or more of the impairments listed in the regulations, which includes both physical and mental impairments. 20 C.F.R. § 404, Subpt. P, App. 1. Mental impairments are listed in the appendix under Part A § 12.00, which contains three criteria for determining the

severity of the listed mental impairments. Id. These criteria look at whether there is marked interference with activities of daily living, social functioning, concentration, persistence or pace, and repeated episodes of decompensation. Id. Part A § 12.00(A). Episodes of decompensation "are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Id. Part A § 12.00(A)(4).

Under the fourth step, if the claimant is unable to show his impairment meets one of the listed impairments, then he must show, based on the assessment of his RFC, he is unable to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The RFC takes into consideration that the claimant's impairments may cause physical and mental limitations that affect his or her ability to work. 20 C.F.R. §§ 404.1545, 416.945. The RFC is the most a claimant can do despite any limitations caused by an impairment. Id. All relevant evidence in the record, including medical and non-medical evidence, is taken into consideration by the Commissioner when making a determination of a claimant's RFC. Id.

The Commissioner must consider all of plaintiff's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent

with the objective medical and non-medical evidence in the record. SSR 96-7p, 1996 WL 374186 (S.S.A.). In cases where the symptoms alleged include pain, the RFC must throughly discuss and analyze the objective medical and other evidence in relation to the symptoms. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.). This discussion must include a resolution of any inconsistencies in the record, address a logical explanation of effects of the alleged symptoms on the individual's ability to work, contain a determination of why symptom related functional limitations can or cannot be reasonably accepted as consistent with medical or non-medical evidence, and address any medical opinions contained in the record. Id.

If the claimant is able to meet his burden under the first four elements, the burden shifts to the Commissioner. The fifth step requires the Commissioner to determine, based on the claimant's RFC, age, education, and work experience, if the claimant can make an adjustment to other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, the Commissioner will find that the claimant is not disabled. Id. On the other hand, if the claimant cannot make an adjustment to other work, the Commissioner will find the claimant is disabled. Id.

**C.     Judicial Review**

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); accord Carey, 230 F.3d at 135.  The Fifth Circuit has described this burden as more than a scintilla, but lower than a preponderance. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).  A finding of "'no substantial evidence'" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  Johnson v. Bowen, 864 F.2d 340, 344 (5th Cir. 1988) (citation omitted).

If the Commissioner's findings are supported by substantial evidence, the Court must defer to the Commissioner, and affirm the findings.  See Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).  In applying the substantial evidence standard, the Court scrutinizes the record to determine whether such evidence is present.  The Court, however, does not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner.  Id.; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citations omitted).  Factual conflicts that

exist in the record are for the Commissioner and not the Court to resolve. Masterson, 309 F.3d at 272. It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: (1) objective medical evidence or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and others who have observed him; and (4) the claimant's age, education and work history. Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991) (citations omitted).

## IV. ADMINISTRATIVE RECORD

Plaintiff was 44 years old, possessed a sixth grade education, and had worked in the United States as a farm worker, carpenter's helper, and construction laborer at the time of the administrative hearing. Tr. 19. He claimed he became disabled on November 20, 2000, due to a work related injury that occurred on May 17, 2002. Tr. 69. Plaintiff alleged his disabilities included depression, vision, leg, head, shoulder, and neck problems. Tr. 79, 96.

### A. Vision Impairment

One of the impairments that plaintiff alleged rendered him disabled was an impairment of his vision. Tr. 79. Plaintiff claimed that there were times when he was physically unable to complete a task because his eyesight became blurry. Tr. 100. He also claimed he had experienced a sudden loss of sight once. Tr. 79. At the administrative hearing, plaintiff testified that he has frequent problems with his

vision, which include the inability to see at times and blurred vision. Tr. 483. Two of plaintiff's treating doctors indicated his vision was not impaired. Tr. 155, 287. The Social Security Field Office representative noted that plaintiff did not suffer from vision problems. Tr. 77. During the administrative hearing, the medical expert testified that plaintiff did not suffer from vision limitations. Tr. 488-89. The ALJ found that plaintiff did not suffer from a severe vision impairment because it would not more than minimally interfere with his ability to work. Tr. 20.

## B.    Right Leg Injury

Plaintiff has claimed a right leg injury also limited his ability to work. Tr. 79. During the hearing, he testified the injury to his leg was one of the reasons he was unable to work and that since the accident, he had fallen several times due to his leg injury. Tr. 482. Plaintiff also stated that he was unable to stand and occasionally used a cane. Id. But later during his testimony, plaintiff stated that he spends a large amount of the time standing, and can walk for 10 to 15 minutes without having to sit. Tr. 484. The medical expert at the hearing stated he believed plaintiff could stand or walk six hours a day. Tr. 488.

An x-ray of plaintiff's right tibia and fibula, taken in March 2002, revealed no evidence of a fracture or dislocation. Tr. 185. An MRI was performed to further investigate the area of the right leg that plaintiff claimed was causing him pain. Tr. 145. The MRI revealed no abnormalities at the site of his pain. Id. A whole body

scan, performed on August 2, 2002, emphasizing the tibia and fibula region, also showed no signs of abnormalities. Tr. 144. Citing the above evidence, the ALJ found that plaintiff did not suffer from a right leg injury that was severe because it would not more than minimally interfere with his ability to work. Tr. 20.

## C.    Right Shoulder Injury

Plaintiff also included in his application for disability benefits that he suffered from a shoulder injury. Tr. 79. However, during his testimony at the administrative hearing, he did not mention the injury to his shoulder, or any limitations resulting from the shoulder injury. Tr. 480-84.

Four months after the work injury, plaintiff was evaluated by Dr. Juan Galvan in connection with his workers' compensation claim. Tr. 221. During this evaluation, he complained of neck, shoulder, and back pain. Tr. 222. Dr. Galvan noted decreased motion of the shoulder due to dull pain and a muscle spasm, and diagnosed him, in regards to his shoulder pain, as having sustained a shoulder sprain. Tr. 223. Plaintiff was referred to physical therapy to treat his injuries. Tr. 224, 220. After continuing to experience shoulder pain, he was referred to another doctor for pain management. Tr. 217.

Plaintiff was also diagnosed with a shoulder strain by Dr. Jose de Jesus Trevino, a pain management doctor, who recommended that plaintiff receive epidural blocks to reveal his shoulder pain. Tr. 297-98. During a follow-up visit,

after he had received the epidural blocks, Dr. Trevino noted plaintiff had a good range of motion. Tr. 296. An April 2002 MRI of plaintiff's right shoulder revealed no evidence of displaced fracture, or a dislocation of the shoulder. Tr. 207. The ALJ found, based on the evidence in the record, that plaintiff did not suffer from a severe shoulder injury. Tr. 20.

## D. Head and Neck Injuries and Depression

Finally, plaintiff alleged he was disabled due to his depression, as well as head and neck problems. Tr. 79, 96. He testified that he suffered from head and neck pain, continuous headaches, and periods of sadness and depression. Tr. 482-83. Plaintiff claimed he suffered from these symptoms since the accident where the large metal object fell on his head. Tr. 66.

After the accident, on June 7, 2000, a CT scan of plaintiff's head revealed nothing remarkable. Tr. 453. Plaintiff was seen by Dr. Paxton Longwell, a neurologist, for treatment of his chronic headaches. Tr. 344. Dr. Longwell found his neurologic examination to be normal. Id. Shortly thereafter, Dr. Longwell ordered an MRI of plaintiff's brain, which also revealed no remarkable findings. Tr. 447.

Plaintiff was simultaneously being evaluated by Dr. David Dennis, an orthopedic surgeon, who recommended he undergo a discogram. Tr. 267. Dr. Dennis stated he believed plaintiff's symptoms were consistent with those of

cervical disc syndrome.  Id.  After Dr. Dennis performed the discogram, he noted

plaintiff was still suffering from the classic symptoms of cervical disc syndrome,

and due to MRI results, and changes in the discogram, he believed plaintiff was a

good candidate for surgery.  Tr. 266.  In November 2001, plaintiff was admitted

and a underwent cervical fusion of his C4 and C5 vertebrae using the left anterior

iliac crest bone.  Tr. 273.  Six weeks after the surgery, Dr. Dennis noted plaintiff's

x-rays revealed a well-healed fusion, and stated he should be able to return to work

in five months.  Tr. 258.

During this same visit, Dr. Dennis also noted that plaintiff was still suffering

from headaches.  Id.  An MRI performed in January 2002 of plaintiff's brain

revealed right frontal subcortical white matter.  Tr. 446.  Dr. J. Felipe Santos

reviewed the MRI results with plaintiff, and indicated that the white matter was of

no clinical consequence.  Tr. 247.  Plaintiff was receiving physical therapy at this

time.  Tr. 181-82.  In April 2002, Dr. Alex Flores stated plaintiff had a medium-

heavy functional capacity work level, and should be able to return to work full-time

on June 17, 2002.  Id.  He participated in a work hardening program with Dr.

Flores, for six weeks in May to June 2002, where the goal was to improve his

functional capacity to enable him to return to gainful employment.  Tr. 170.

However, plaintiff did not return to work but, continued to complain that he

suffered from neck and headache pain.  Tr. 226.  He visited another orthopaedic

doctor, Dr. Pete E. Garcia, in October 2002.  Id.  An MRI was performed, and revealed a successful immobilization of C4 and C5 vertebrae without any complications.  Tr. 230.  Dr. Garcia directed plaintiff to continue physical therapy, and noted his current status was post cervical fusion with residual neck pain.  Tr. 160.

Plaintiff was seen by Dr. Ernesto H. Guido for a disability evaluation, for the Texas Rehabilitation Commission, on November 26, 2002.  Tr. 153.  Dr. Guido found he had no particular restrictions in sitting, standing, moving about, and was able to lift, carry, and handle objects without significant restriction.  Tr. 155.  Dr. Guido did note that plaintiff was suffering from recurrent headaches and chest pain. Id.  He noted that while there were no neurological findings, it was difficult to determine how plaintiff's symptoms restricted his physical activities.  Id.

Dr. John M. Borkowski reviewed the October 2002 MRI, which was previously reviewed by Dr. Garcia.  Tr. 142.  Dr. Borkowski stated plaintiff had a beautiful fixation, and was unable to explain plaintiff's complaints of continuing pain and headaches.  Id.  He prescribed a low dose of Depakote to help with plaintiff's headache pain.  Tr. 445.  Plaintiff then began to see Dr. Deborah Carver for treatment of his headaches.  Tr. 440-43.  Dr. Carver prescribed various medications, and dosages to treat the frequent headaches.  Id.

Plaintiff did admit some relief from the medication prescribed by Dr. Carver,

but continued to claim he suffered from a low grade headache all the time that would intensify periodically.  Tr. 440.  He also claimed his headache caused him to fall to the ground once.  Tr. 423.  In January 2004, plaintiff began treatment with yet another doctor for his headaches.  Tr. 425.  Dr. Jorge E. Mendizabal stated plaintiff claimed to suffer from two types of headaches: (1) a constant, dull, and low grade headache he suffered from all the time that was not disabling; and (2) a more severe headache that was very disabling and quick in its onset, even forcing him to collapse at times.  Id.  Dr. Mendizabal recommended he continue taking Depakote and Topamax prescribed by Dr. Carver, and to add Indomethacin.  Id.  He diagnosed plaintiff as suffering from hemicranial headaches after head trauma.  Tr. 424.

On April 22, 2003, Dr. Garcia, who had been seeing plaintiff for his neck injury, gave his medical opinion on plaintiff's ability to do work related activities.  Tr. 357.  Dr. Garcia indicated that he could walk or stand for less than two hours, could sit for a maximum of two hours, and he would need to lie down at times during the day due to severe pain.  Tr. 358.  He also stated that plaintiff's right leg was weak, and could fall at any time, which posed a severe hazard to plaintiff and potential co-workers.  Id.  Dr. Garcia claimed these limitations were supported by his medical findings that plaintiff suffered residual symptoms from his disc surgery, and weakness in his right leg.  Id.

A month later, Dr. Garcia stated that plaintiff was still undergoing physical therapy, but was getting better. Tr. 428. He stated that plaintiff was ready to progress to a work hardening program. Id. On July 30, 2003, Dr. Garcia stated plaintiff had been treated successfully by him, and while he continued to complain of lower back pain, there was no objective evidence to confirm he suffered from a herniated disk, or anything of that nature. Tr. 427. Dr. Garcia referred plaintiff to a psychiatrist for further assessment, and stated he was done with plaintiff's treatment. Id.

Plaintiff's mental health had been assessed in July 2001 by Bea Saenz, a licensed therapist, who diagnosed him with situational depression, an adjustment disorder. Tr. 245. Ms. Saenz met with him nine times from July to October 2001. Tr. 236-44. During these sessions, plaintiff discussed his physical pain and stress from being unable to provide for his family. Id. Ms. Saenz continued to treat plaintiff in April and May of 2002, while he was participating in a work hardening program that included group counseling sessions with Ms. Saenz. Tr. 232-35. During these group sessions, plaintiff expressed feelings of helplessness. Id.

Plaintiff was seen by a Dr. Burton Kittay, a licensed psychologist, in November 2002. Tr. 149. He found the patient to be coherent, oriented in time and place, did not suffer from paranoia, and possessed good insight and judgment. Tr. 150-52. However, Dr. Kittay stated he believed plaintiff had a poor prognosis.

Plaintiff told Dr. Kittay that he had experienced hallucinations since his injury. Tr. 151. He said that he saw cockroaches, and rats when they were not really there. Id. Dr. Burton's notes state plaintiff had never been admitted to a psychiatric hospital, or had formal psychiatric treatment, and was not currently taking any psychiatric medication. Tr. 140.

Dr. Burton diagnosed plaintiff as suffering from: (1) pain disorder associated with both psychological factors and a general medical condition; (2) major depressive disorder, recurrent, severe with psychotic features, by report; (3) back and neck injury, "stains" on brain, screws in neck; (4) psychosocial problems: legal, financial, occupational, and medical problems, problems with primary support group, problems related to social environment; and (5) GAF 40: unable to work due to back and neck injury. Tr. 152.

Dr. Simpson, the medical expert at the administrative hearing, stated based on his review of the medical records that plaintiff did not meet or equal any listing-level impairment. Tr. 488. Dr. Simpson further stated plaintiff's physical diagnosis was presumed to be post-concussion syndrome. Tr. 485. Concerning his cervical surgery, Dr. Simpson stated he did not agree with the decision to operate because plaintiff was not a good candidate for surgery because to operate solely based on pain did not have a very high likelihood of success. Id.

Dr. Sharon Rogers also testified at the administrative hearing as a medical

expert.  Tr. 493.  Dr. Rogers reviewed the records of plaintiff's counseling and evaluation by Ms. Saenz, and Dr. Kittay's evaluation.  <u>Id.</u>  Dr. Rogers disagreed with Dr. Kittay's GAF assessment of 40, stating she did not understand the assessment in light of the record, and Dr. Kittay's own notes.  Tr. 494.  She stated she believed plaintiff suffered from an affective disorder associated with his pain. <u>Id.</u>

Dr. Roger's testimony then turned to whether plaintiff fulfilled the severity criteria of a 12.04 affective mental disorder under the Social Security regulations. Tr. 495.  In discussing the three criteria of 12.04, first, Dr. Rogers stated that the medically determinable impairment would include pain disorder, and possibly major depressive disorder, even though there was no clear evidence indicating a major depressive disorder.  <u>Id.</u>  Second, she stated plaintiff did suffer from mild restrictions of daily living, moderate restriction of social activity, moderate difficulty in concentration, and no episodes of decompensation.  Tr. 496.  Finally, there was no evidence to satisfy the "C" criteria.

Mr. Billy Brown, a vocational expert, also testified at the administrative hearing.  Tr. 497-502.  The ALJ posed the following hypothetical question to Mr. Brown:

> Let's assume that a claimant would be able to occasionally lift
> and carry 50 pounds, frequently 25, stand/walk for about six
> hours in an eight hour workday, same thing with sitting down,
> and let's assume also that the claimant would have moderate

difficulties in maintaining social functioning, moderate
difficulties in concentration, persistence or pace, moderate
defined as the limitation being greater than mild but less than
marked and the individual is still able to function satisfactorily.
With that RFC, those restrictions, would he be able to go back
to his past relevant work.

Tr. 499. Mr. Brown testified that plaintiff would not be able to return to his past

relevant work due to his exertional and concentration limitations. Id. However,

Mr. Brown further testified that there are jobs in the national economy that an

individual with these restrictions would be able to perform. Tr. 499-500.

On cross examination, plaintiff's attorney asked Mr. Brown if an individual

that could stand or sit less than two hours with normal breaks would be able to

perform the jobs he previously stated plaintiff was still able to perform. Tr. 501.

Mr. Brown stated that an individual with those limitations would not be able to

perform those jobs. Id. The ALJ asked plaintiff's attorney what evidence provided

the basis for the limitations posed in the hypothetical. Id. Plaintiff's attorney stated

the limitations he posed to Mr. Brown were from Dr. Garcia's assessment of the

plaintiff's RFC in April 2003. Id.

The ALJ determined, based on the evidence in the record, including the

credible testimony of both Dr. Simpson and Dr. Rogers, that plaintiff's

"impairments were not 'severe' enough, singly or in combination, to meet or

medically equal, one of the impairments listed in Appendix 1, Subpart P,

Regulation No. 4." Tr. 21.

**E.    Residual Functional Capacity Assessment**

The ALJ stated because plaintiff's impairment did not meet one of those

listed in the regulations, he would have to determine his RFC to perform his

previous work, or other work that existed in significant numbers in the national

economy.  Id.  The ALJ's decision contains a thorough review of the evidence,

both medical and non-medical, and determinations of whether the evidence is

credible.  Based on this evidence, the ALJ found that plaintiff:

> retains the residual functional capacity to lift and/or carry 50
> pounds occasionally and 25 pounds frequently; stand and/or
> walk for about 6 hours in an 8-hour workday; and sit for about
> 6 hours in an 8-hour workday.  Furthermore, the claimant has
> moderate (the limitation being greater than mild but less than
> marked and the individual is still able to function satisfactorily)
> difficulty maintaining social functioning and moderate difficulty
> in concentration, persist[ence] or pace.

Tr. 27.

The ALJ acknowledged that in arriving at the RFC, he had considered

plaintiff's allegations.  Id.  However, the ALJ found plaintiff's allegations of pain,

symptoms, and limitations were not totally credible, and were credible only to the

extent that the allegations were compatible with his residual capacity.  Tr. 28.  The

ALJ stated his decision was based on all the evidence in the record, including

evidence from examination, diagnostic testing, participation in work hardening

programs, and plaintiff's activities of daily living.  Id.

In addition, the ALJ's decision discussed conflicting evidence in the record. Tr. 28. He found Dr. Garcia's evaluation of plaintiff's ability to engage in work-related activities was not credible because it was inconsistent with other evidence in the record. Id. The ALJ noted he considered the findings of the state agency medical consultants in accordance with Social Security Ruling 96-6p. Tr. 29. He found that while the limitations to plaintiff's exertional limitations, and mental impairment were as severe as noted by the medical consultant, the limitations associated with plaintiff's non-exertional limitations were overstated. Id.

Finally, the ALJ discussed plaintiff's ability to engage in his previous work, or perform jobs that existed in significant numbers in the national economy. Tr. 29-31. The ALJ found, based on the vocational evidence, the credible testimony of the vocational expert, and plaintiff's RFC, that he was unable to perform his previous relevant work. Tr. 29. The ALJ recognized the burden was on the Social Security Administration to prove that were relevant jobs in the national economy that plaintiff could perform in light of his RFC, age, education, and work experience. Tr. 30. After reviewing the relevant evidence, however, the ALJ found that plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy." Tr. 31. The ALJ found the opinions at the initial and reconsideration levels were supported by the record, and that plaintiff was not entitled to DIB or SSI benefits. Tr. 29, 32.

# V.  DISCUSSION

Plaintiff based his claim for DIB and SSI benefits on work injuries to his head, shoulder, and right leg, which caused him to suffer from headaches, shoulder and back pain, and sudden loss of eye sight.  Tr. 79.  He also claimed he suffered from mental and emotional problems.  Tr. 96.  Despite this combination of problems, the objective medical and non-medical evidence does not establish that plaintiff was under a disability as defined by the Social Security Act.  See 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff raises two objections to the ALJ's decision.  First, he argues that the ALJ applied the wrong legal standard because he failed to consider properly the combined effect of plaintiff's physical and mental impairments.  (D.E. 21, at 1, 3-4).  More specifically, plaintiff argues that the ALJ failed to properly consider the severity of the combined effect of his headache and mental depression impairment on his ability to work.  Id.  Social Security Regulations require the Commissioner to consider the combined effect of a claimant's multiple impairments in making its determination of whether the impairments are medically severe.  20 C.F.R. § 404.1523; Loza, 219 F.3d 378, 393.   The regulations further require that where the symptoms alleged include pain, the RFC must throughly discuss and analyze the objective medical and other evidence in relation to the symptoms.  SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.).

22

In his decision, the ALJ discussed <u>all</u> the medical evidence of record, including evidence concerning plaintiff's headaches and depression. Plaintiff argues that the ALJ made no analysis of the combined effects of plaintiff's various physical and mental impairments. (D.E. 21, at 4). To the contrary, the ALJ discussed in his decision all of the medical evidence, including evidence concerning his headaches noting that while he claimed to suffer from residual headaches, his physician stated it was difficult to determine how these subjective symptoms restricted plaintiff's overall physical activities. Tr. 25.

The ALJ also considered plaintiff's mental depression disorder. Tr. 22. While the ALJ rejected Dr. Kittay's opinion that plaintiff had a GAF of 40, the ALJ determined the evidence indicated that plaintiff had a medically determinable, and severe major depressive disorder impairment. <u>Id.</u> However, the ALJ found that this disorder only had mild restrictions in plaintiff's activities of daily life; created moderate difficulty in his social functioning and his ability to maintain his concentration, persistence; or pace, and he had no episodes of decompensation. Tr. 22-3. Based on these findings, the ALJ held that plaintiff's mental depression impairment did not meet the "C" criteria. Tr. 23.

In making his RFC assessment, the ALJ stated he took into consideration all of plaintiff's symptoms. Tr. 21. These symptoms included plaintiff's mental

depression and headaches.  Tr. 22, 24.  Plaintiff's contention that the ALJ failed to discuss properly all of plaintiff's impairments is refuted by the record.

Second, plaintiff argues that the ALJ failed to properly consider the evidence, but rather relied improperly on the testimony of Dr. Simpson.  (D.E. 21, at 2-3).  Among the evidence plaintiff argues the ALJ did not properly consider is a State agency medical consultant's opinion of plaintiff's non-exertional limitations.  (D.E. 21, at 3).  Plaintiff also contends that Dr. Simpson's testimony is not entitled to great weight because he was not a treating physician.  (D.E. 21, at 2).

Plaintiff is correct that a State agency medical consultant opinion may not be ignored.  (D.E. 21, at 3).  Social Security Ruling 96-6p states "findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels."  SSR 96-6p, 1996 WL 374180, *1.  The ALJ may not ignore opinions from State agencies, and "must explain the weight given to these opinions in their decisions."  Id.

Plaintiff is also correct that generally more weight is given to treating doctor's opinions because Social Security Regulations recognize that a treating doctor is likely to be the most able to provide a "detailed, longitudinal picture" of a

claimant's impairments. 20 C.F.R. § 404.1527(d)(2). If a treating doctor's opinion on the nature and severity of a claimant's impairment "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," then the Commissioner will give the treating doctor's opinion "controlling weight." 20 C.F.R. § 404.1527(d)(2); Spellman v. Shalala, 1 F.3d 357, 364 (5th Cir. 1993).

The evidentiary weight accorded a treating doctor's opinion not given controlling weight is determined by looking at length of treatment, nature and extent of treatment relationship, supportability evidenced by medical signs and laboratory findings, consistency with record, specialization, if any, of the treating doctor, and other factors brought to the Commissioner's attention. 20 C.F.R. § 404.1527(d). The Commissioner can assign little or no weight to a treating doctor's opinion, if it is inconsistent with other substantial evidence in the record. Id.

The ALJ stated that he took into consideration treating, examining, and non-examining sources, including the reports submitted by State agency medical consultants. Tr. 28. He further stated he had accepted part of the findings of the State agency consultant, but rejected the opinion regarding plaintiff's non-exertional limitations because these conclusions were not supported by the record. Tr. 29. The ALJ also found Dr. Garcia's evaluation, (Tr. 357), to be inconsistent with the

evidence in the record, and assigned it no weight.  Tr. 28.

Courts have a limited function in reviewing the decision of the Commissioner's decision to award or not award DIB and SSI benefits under the Social Security Act.  The ALJ's decision is supported by substantial evidence on the record as a whole, and the ALJ properly applied the applicable legal standards.

## VI.  <u>RECOMMENDATION</u>

For the foregoing reasons, it is respectfully recommended that plaintiff's motion for summary judgment, (D.E. 18), be DENIED.  It is recommended that the government's motion for summary judgment, (D.E. 19), be GRANTED, and that the decision of the Commissioner denying plaintiff's application for DIB and SSI benefits be AFFIRMED.

Respectfully submitted this 6th day of October 2005.

_____

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C), and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).